2018-15-01 The board's decision in this case is infected by two clearly erroneous claim constructions that are reviewed de novo. Explain something basic to me. The key argument seems to be whether seams would run, if I may, vertically or horizontally. That is, up and down the wellbore or around the shaft. Is that a fair statement? I think it's fair to say that that's what the board and Packers Plus is focused on. I think it mistakes the key issues here. I'm asking this question, and it's probably more directed to your opposing counsel, but they'll be able to answer it too for me, and it's sort of a factual question. From the description of the invention, you're going through layers of, let's say, shale, and then something else, and then mud, and so on. And the concern is to keep the material in one layer from leaching down into the other layer. Is that not correct? So the concern is to... That's why you're expanding. Exactly, Your Honor. The concern is to stop leakage across that seal. So if you're in a layer, and my hands are about a foot apart, if you're in a layer of oil shale, and you drill a hole through it, doesn't the material in the oil shale continue to flow around that hole? What I'm saying is a horizontal seam would be irrelevant. So certainly the discussion in the prosecution history is towards longitudinal flow. The primary purpose of that seal is to seal the annulus around the tubing within the borehole wall. First, the idea that that can only be longitudinal is incorrect. So Dr. Howde, Packers Plus' expert, has admitted that flow between formations can be across a borehole. Especially now that there is directional drilling, horizontal wells are commonplace. So at Appendix 1361 through 1364, Dr. Howde admits in testimony that that channeling that he focuses on can, in fact, go across a wellbore. The second thing is that Mr. Cox, Baker Hughes' expert, has explained that circumferential seams, grooves or channels as the board termed them in its construction, can indeed lead to that longitudinal channeling or leakage across the seal. And so even those circumferential grooves can lead to longitudinal channeling. Counsel, why don't you get to the major issue, which is whether Thompson really discloses the seamless channel of the claim? Certainly, Your Honor. So the primary findings, the board found that the valleys 24 in Thompson's Figure 1 embodiment, and that's the embodiment of Thompson on which the board relied, that those valleys 24 are not seams based on the erroneous construction that only longitudinal channels would be considered seams. When that falls away, the primary findings, under the proper construction, the primary findings have no basis. Their alternative finding is that the Figure 1 embodiment could have only one band. Well, first of all, that's not supported by substantial evidence. But an easier question is that it is legal error for what the board relied on for that finding. In particular, the description of the Figure 1 embodiment never says that Formation 20 can have only one band. It's nowhere in that description of Figure 1. Instead, the board had to look to a single sentence in Column 2 of Thompson, about Line 51, that says the formation can have one or more band. Now, in isolation, it's tempting to read those two things together. But when you read Thompson in context, it actually discloses a specific embodiment, Figure 2, that has a single swellable band, 36. And that band, in fact, has grooves that a posita would recognize to be seams. Let me ask you about sealing the wellbore from said swelling. The spec provides several examples where expansion of the tubular stand occurs prior to sealing. For instance, it provides the casing or liner can be expanded with a swage to reduce the volume of the annular space around the casing or liner that the rubber sleeve would have to bridge. That's in the 505 of Column 1, Lines 49-52. Or the casing or liner can also be expanded with a swage, preferably prior to the onset of significant jacket swelling. Explaining that Figure 4 shows a swage, schematically illustrated as 22, can expand the string before the covering has finished swelling. And while voids such as 24 and 2 still exist, why don't those disclosures defeat your disclaimer argument? Well, Your Honor, because at Column 2, beginning at about Line 30, depending on the dimensions of the wellbore and the covering, the annular space could be sealed by swelling of the covering without physical expansion of the string. Could be. Could be. It explicitly discloses, which Thompson does not do. It explicitly says you can create a seal without expansion. Now, fundamentally, the record bears out that there is a limited number of options of ways to create this seal. The prior art that was distinguished during prosecution expanded the pipe and then the elastomer swelled to fill the gap because the expansion by itself wasn't enough. The alternative disclosed in the 505 is creating that seal by swelling alone. And then that seal, once done, can either be done without any expansion at all or expansion can occur after the seal has been formed. Now, that's a limited number of options. And the Board essentially neglected that third option. In its decision, it said that is possible, but we don't like it because of Claims 3 and 4. And they said that they didn't like it because they concluded that Claims 3 and 4 would not convey to a person of ordinary skill in the art that that third possibility was, in fact, a possibility. The problem with that finding is nobody testified to that. Dr. Howe didn't address Claims 3 and 4. He didn't say that a posita wouldn't have understood from those that that third possibility was, in fact, a possibility. Let me ask you a housekeeping question. If we disagree with you on both your claim construction arguments, are your remaining unpatentability challenges moved? And if not, which arguments survive past claim construction? So, no, Your Honor. Even under the claim construction that the Board adopted, the testimony of Mr. Cox, Baker Hughes' expert, that was not responded to by Dr. Howe, is that the circumferential grooves in Thompson, which the Board did not say would not be present in its primary finding, those circumferential grooves, Valleys 24 and the Figure 1 embodiment, would permit longitudinal channeling around that seal. And that testimony from Mr. Cox can be found at Appendix 12. Sometimes paper is better. Some lessons are learned the hard way, too. I believe it's 1229 to 1231, but let me briefly confirm here. It is 1242 to 1244. So Mr. Cox explained that even those circumferential grooves with Valleys 24 would permit longitudinal channeling. To the extent that Packers Plus' expert, Dr. Howe, says anything else, it is on its face conclusory. It offers no explanation whatsoever. While we're talking about evidence, in the blue brief at 52, you say that a person of skill wouldn't necessarily understand the single reference to drill pipe in Thompson to refer to expandable drill pipe rather than drill pipe that cannot be mechanically expanded. But you don't cite to anything, for example, your expert declaration. Your Honor, what that refers to is the, or what that depends or follows from, is the patent that's cited earlier in that paragraph, Your Honor. And it was addressed, I don't have the site right in front of me, but I can find it on my rebuttal and bring it back to you. It was addressed by the expert and below that that patent, in fact, discloses expandable drill pipe and did not present expandable drill pipe as being its new invention. So expandable drill pipe was known and is consistent with Thompson's disclosure in every single embodiment that its pipe is, in fact, expandable and expanded before the polymer swells. I see that I'm in my rebuttal time, so I'll briefly conclude and then sit down unless Your Honors have any other questions. Ultimately, the claim constructions are clearly in error. Seamless means no seams. Dr. Howe, Packers Plus' expert, agreed with that in his deposition. Nobody has argued that there was a redefinition of the term. Nobody has argued that there was a disclaimer of the term. And nobody has argued that the plain meaning of the term is somehow inconsistent with its use in the 505 patent or in the prosecution history. It might have been better if the word seamless had been discussed in the written description in a little more detail. Because it doesn't really appear anywhere except in the claim. So what it does describe, Your Honor, is a single annular covering without seams. And so while it doesn't necessarily go into a lot of detail, that statement combined with the drawing that shows a single annular covering without any grooves was understood. We will save the remainder of your time for you. Thank you. Mr. Qureshi. May it please the Court. The whole point of the 505 patent is to prevent channeling of fluid from one zone to the other. That's brought out in the background of the patent. And then at the end of the detailed description, it says, the present invention offers the advantages of easy deployment, prevention of channeling due to the bonded mounting of the covering. Judge Lynn, you're right. The word seamless does not appear anywhere in the specification other than in claim one. The word seam does appear. And that's at the bottom of column two where it says, preferably when bonded, it is a single annular shape with no seams that can allow channeling. So in the specification and in the file history, seams is tied to channeling. There's no description whatsoever in the 505 patent. It would almost seem to be a distinction without a difference. No seams versus seamless. Fair enough, Your Honor. I agree. And that's why I'm saying even though the word seamless doesn't appear in the specification, the word no seams does appear. And it appears in the context of channeling, which the 505 patent is trying to prevent. You sort of rushed past, but I asked your opposing counsel at the start about layers of material, shale, leachy, I think you have that in Texas, and so on. And my understanding was that the patent was devoted to keeping leaching from one area into another area. And his response was horizontal drilling, among other things. And I thought, gee, yeah, maybe. Except even in horizontal drilling, if the pipe is going horizontally through a layer, it's still running the fluid or whatever. It's still running along the length of the pipe as opposed to going around it. So this is in the context, the 505 patent is in the context of sealing liner against the bare borehole. And so in the prior art, as the 505 patent talks about, it was done with cementing. And in the 505 patent, you're doing it with swelling. The issue is when you have a horizontal borehole, let's say, and you want to do multistage fracking, you want to frack different zones, as they say in the art, at different times, you need to set off those zones so the fluid doesn't leak from one zone to the other. And that's what the background says in column one, lines 20 through 25. It says there are also uncertainties as to the distribution of the cement casing, causing concerns of channeling of fluids from one zone penetrated by the casing or liner to an adjacent zone. So that's the longitudinal context, that you want to prevent channeling from one zone to the next zone where you have the liner in between. So moving ahead to Thompson, figure one of Thompson, the grooves, as Baker Hughes calls it, that may allow fluid to flow circumferentially around the stand. But Thompson is pretty clear that it forms a tight seal so you can't get the fluid past that packer or that device that's expanded and swelled against it. You're saying that's seamless? Yes, Your Honor. Right. There is no description in the 505 patent of a seam being a groove or a line or a furrow or some indication on a surface that two edges are joining, which is what Baker Hughes wants the construction of seam to be. It is a term of art, as used in the 505 patent. There's no description of, well, look at the surface of the covering and you'll know whether it's seamless or not. It's described functionally with respect to whether channeling is allowed or not. With respect to... Once it expands, wouldn't a seam become irrelevant? That is, I'm going to use a technical term now, smushes up against the edges of the board. In the existing, whatever you want to call it, call it a seam, is pressed against that edge, what's the difference? Well, I would agree with you, Your Honor. If it's a line or a groove, which is the seam, then when it's pressed against the borehole, as long as you're preventing the channeling, it's seamless. So I would agree it's irrelevant in that state. With respect to the disclaimer argument, the office action response, which Baker Hughes points to as providing disclaimer of whether expansion is covered in Claim 1 or not, they amended Claim 1 to say sealing occurs based on the swelling,  and Baker Hughes is arguing, well, the prior art disclosed expansion, and so therefore that amendment to Claim 1 disclaimed any use of expansion, or at least expansion prior to the sealing. If you look at the office action response, Your Honors, every time they talk about what the prior art did, they also talk about that the prior art didn't have seamless coverings. Moreover, they don't tie the claim amendment to expansion. They don't say the amendment to Claim 1 precludes expansion or limits the claim to solely swelling without expansion happening before that. At minimum, there are multiple, at least two, interpretations of what they disavowed, if anything. And under the case law, which I think is pretty clear, if there are multiple interpretations of whether an amendment or an argument was sufficient for disclaimer or not, it's not. It's not sufficient. So I would, unless there's any questions on the disclaimer, I'll move on to invalidity of Thompson based on the different constructions. One, as we discussed about with respect to Figure 1 of Thompson, it's not seamless because it prevents channeling. So under the board's construction, Thompson clearly discloses that. Under Baker Hughes' construction, where seamless is indicated by a line or a groove or some indication that two edges have been joined, Thompson specifically discloses that in Figure 1, one of those bands, which is marked as 22, can be what's on the stand. You don't need the entire physical profile of Figure 1. It can just be one band. And so with just one band, then you don't have those grooves, as Baker Hughes calls it, that one band of itself is seamless in that it doesn't have the grooves that they say exist in the rest of Figure 1. With respect to sealing the wellbore from swelling limitation, they don't dispute that Thompson invalidates under the board's construction. Under Baker Hughes' construction, which is sealing occurs solely based on swelling without expansion, Thompson does disclose swelling without expansion. Specifically, as counsel mentioned, the Thompson reference talks about drill pipe. Not only does our expert say drill pipe may not be expandable, Thompson, in the same paragraph where it says the conduit can be drill pipe, in the next sentence says, and it may be expandable. So that, by inference, is that the drill pipe may not be expandable. Moreover, Claims 8 and 11 of Thompson, if you look at Claim 11, it's specifically talking about sealing based on swelling. It doesn't talk about expansion. And then in a dependent claim, it talks about expansion. So that's further evidence that Thompson disclosed sealing the wellbore based on swelling without having to expand first. So unless there are any questions, that's all I have. Thank you, counsel. Mr. Robinson has some rebuttal time. Your Honor, the argument you just heard about Claims 8 and 11 was never raised below. It appeared first in the final written decision. So it is an improper basis for the Board's finding that Thompson discloses sealing without expansion of its stand. What's your response to the argument that even a single band in Thompson is enough? Your Honor, the description of the Figure 1 embodiment never says that that could be as few bands as a single band. The only place that that language draws support is Column 2, Line 51 in the summary that's describing the invention as a whole. Read in context of the overall patent, the Figure 2 embodiment includes a single swellable band of 36, and that band has grooves. There's nothing in Thompson that says that that statement in the summary applies specifically to the embodiment of Figure 1. In context of the fact that there is an embodiment with a single swellable band, the only reasonable reading is that it would be referring to the multiple embodiments more generally. Importantly, that single swellable band in Figure 2 includes grooves or channels that the Board, with its construction, implicitly recognizes can be a seam. The really remarkable thing about Packers Plus' dismissal of the dictionary definition on which Mr. Cox relied for the groove that resembles a joint of two pieces of material, it is the exact same definition that Dr. Haut, Packers Plus expert, quoted for his opinion about the meaning of seam. Not just the same word, but definition number three of that definition has Dr. Haut's part, and then it continues on to include the second part that Mr. Cox included, and Dr. Haut omitted without explanation. A seam absolutely includes that groove, and as Mr. Cox explained in Appendix 1229 through 1231 and Appendix 1244 through 1245, those circumferential grooves can, in fact, lead to longitudinal channeling. What he explains there is that the profiled outer surface results in inconsistent swelling that can trap fluids and create weak points. Now, cement was the previous version for sealing that annulus around the and the reason is that when there's heavy mud or things that are flowing past it as it's trying to fill in that gap, it creates channels. That's the same thing Mr. Cox explains here, that even though cement was intended to seal, there were weaknesses, and even though Thompson intended its grooves to seal, there were weaknesses, and that was the reason that the 505 patent, albeit in not as much detail as would have been helpful, but said, no seams, depicted no seams whatsoever, no circumferential, no longitudinal, and it did so with a very plain and straightforward term, seamless. Under that construction, under either construction, those grooves cause longitudinal channeling. If we get past the erroneous constructions, the alternative findings are legally erroneous under net money and are not supported by substantial evidence. For that reason, we ask the court to reverse. Thank you. Thank you, counsel. The case is submitted.